```
UNITED STATES DISTRICT COURT                           (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
J & J SPORTS PRODUCTIONS, INC.,      : 06 Civ. 5431 (BSJ) (JCF)
as Broadcast Licensee of the July    :
16, 2005 HOPKINS/TAYLOR Program,     :     REPORT AND
                                     :     RECOMMENDATION
              Plaintiff,             :
                                     :
     - against -                     :
                                     :
TONJA MEYERS, individually and       :
d/b/a SHE SHA BEAUTY SALON a/k/a     :
SHE'SHA a/k/a SHE'SHA SALON a/k/a    :
SHE'SHAS UNISEX,                     :
                                     :
and                                  :
                                     :
SHE SHA BEAUTY SALON a/k/a SHE'SHA   :
a/k/a SHE'SHA SALON, a/k/a           :
SHE'SHAS UNISEX,                     :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:

The plaintiff, J & J Sports Productions, Inc. ("J & J"), brings this action against a beauty salon and its owner pursuant to the Cable Communications Policy Act of 1984 (the "Cable Act"), 47 U.S.C. §§ 553 and 605. It alleges that the defendants, Tonja Meyers and the She Sha Beauty Salon ("She Sha") unlawfully intercepted and exhibited the plaintiff's broadcast of a pay-per-view boxing event. The plaintiff is seeking statutory damages under 47 U.S.C. § 605(e)(3)(C), as well as reasonable costs and attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii). After the defendants failed to answer or move with respect to the complaint, the plaintiff's motion for a default judgment was granted on May 4, 2007, and the case was referred to me for an inquest on damages.

1

A hearing was held on July 2, 2007, but no one appeared on behalf of the defendants.  Accordingly, the following findings are based on the plaintiff's submissions.

Background

On July 16, 2005, Bernard Hopkins fought Jermain Taylor in a professional boxing match (the "fight") in Las Vegas, Nevada. (Affidavit of Joseph Gagliardi dated March 29, 2007 ("Gagliardi Aff."), ¶ 3).  J & J purchased the right to disseminate the telecast of the fight on closed-circuit television.  (Gagliardi Aff., Exh. A; Complaint ("Compl."), ¶ 15).  For a fee, J & J sublicensed these distribution rights to hundreds of commercial establishments throughout the country.  (Compl., ¶ 16; Gagliardi Aff., Exh. B).  In turn, these establishments, which included bars, theaters, restaurants, and lounges, showed the fight to their patrons.  (Compl., ¶ 16).

In order to ensure limited access to the fight, it was transmitted via closed-circuit television and encrypted satellite signal, and then re-transmitted to cable systems and satellite television companies.  (Compl., ¶ 15).  Upon payment of an appropriate fee, commercial establishments could receive the decoded satellite signal and exhibit the fight.  See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1000 (2d Cir. 1993) (discussing technical details of pay-per-view programming).

The plaintiffs believed that certain establishments were likely to pirate the satellite signal and show the fight without paying the sublicensing fee.  J & J hired an investigative firm to

contract with independent auditors to substantiate these suspicions. (Gagliardi Aff., ¶ 4). On the night of the event, one of the investigators, Lee Packtor, entered the defendants' beauty salon at approximately 11:06 p.m. He was not required to pay any cover charge. (Affidavit of Lee Packtor dated August 9, 2005 ("Packtor Aff."), attached as Exh. C to Gagliardi Aff., at 1). Once inside, Mr. Packtor observed a portion of the pay-per-view broadcast of the event on one television set, even though the defendants had not purchased the right to show the fight.[1] (Packtor Aff. at 1; Gagliardi Aff., ¶ 6). There were ten other people present in a room with a capacity of about twenty-five persons. (Packtor Aff. at 2).

Discussion

    A.    Statutory Framework

The plaintiff alleges that the defendants violated 47 U.S.C. § 553, which makes it illegal to "intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(b). Subsection (c)(1) creates a civil cause of action for "[a]ny person aggrieved by any violation of subsection (a)(1)." Civil remedies, including injunctive relief, damages, costs, and attorneys' fees, are available. 47 U.S.C. § 553(c)(2).

In contrast with § 553, which concerns cable transmissions, §

---

[1] Mr. Packtor observed the undercard, a bout between fighters named McCullough and Larios, and not the main event between Mr. Hopkins and Mr. Taylor. (Packtor Aff. at 1).

3

605 regulates radio transmissions. Section 605 states in part that "no person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Subsection (e)(3) creates a right of action for an injured party, who may seek injunctive relief, statutory damages, costs, and attorneys' fees. 47 U.S.C. § 605(e)(3)(A)-(B).

The plaintiff has elected to receive damages under § 605 rather than § 553.[2] Section 605 allows the aggrieved party the choice of seeking statutory damages between $1,000 and $10,000 or proving actual damages. 47 U.S.C. § 605(e)(3)(C)(i). If the violation is willful and committed for direct or indirect commercial advantage or private financial gain, statutory damages may be increased to $100,000 at the discretion of the court. 47 U.S.C. § 605(e)(3)(C)(ii). If the defendant proves that the violation was inadvertent, the minimum a court can award becomes $250.00. 47 U.S.C. § 605(e)(3)(C)(iii).

B. Jurisdiction and Venue

As this case arises under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Moreover, the Cable Act itself provides for jurisdiction. 47 U.S.C. §§ 553(c)(1), 605(e)(3)(A). There is personal jurisdiction over the defendants in this forum because they were doing business in New

---

[2] "[A] plaintiff cannot recover under both 47 U.S.C. § 605 and § 553." Kingvision Pay-Per-View, Ltd. v. New Paradise Restaurant, No. 99 Civ. 10020, 2000 WL 378053, at *2 (S.D.N.Y. April 11, 2000).

York and because the plaintiff's claims arise from the defendants' transaction of business here. N.Y.C.P.L.R. §§ 301-302.

    C.    <u>Liability</u>

A plaintiff's factual allegations, except those relating to damages, are accepted as true where, as here, the defendants default. <u>See, e.g.</u>, <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 108 (2d Cir. 1997) ("[A] default judgment deems all the well-pleaded allegations in the pleadings to be admitted."); <u>Time Warner Cable of New York City v. Barnes</u>, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998) ("u]pon entry of a default judgment . . . a defendant admits every well-pleaded allegation of the Complaint except those relating to damages." (internal quotation omitted)). In this case, the allegations contained in the complaint establish a violation of the Cable Act by the She Sha Beauty Salon and Ms. Meyers.

As noted above, § 553 of the Cable Act deals with interception of broadcasts transmitted by co-axial cable, whereas § 605 deals with interceptions of radio transmissions. However, because J & J has elected to receive damages under § 605, only liability under that provision need be determined. The telecast at issue here originated as a radio transmission, and § 605 applies when the transmission involves a radio or satellite signal that the defendant intercepts either directly or indirectly. <u>See</u> <u>Community Television Systems, Inc. v. Caruso</u>, 284 F.3d 430, 435 (2d Cir. 2002); <u>Kingvision Pay-Per-View, Ltd. v. Jasper Grocery</u>, 152 F. Supp. 2d 438, 440-41 (S.D.N.Y. 2001). Since the defendants'

conduct included the unauthorized interception of radio signals, liability under § 605 of the Cable Act has been established.

The complaint names Tonja Meyers as an individual defendant and identifies her as the principal of the She Sha Beauty Salon. (Compl., ¶ 7). It asserts that She Sha is a domestic corporation and sole proprietorship.[3] (Compl., ¶¶ 11, 13). The complaint also alleges, upon information and belief, that Ms. Meyers had supervisory capacity and control over She Sha's activities on July 16, 2005, and received a financial benefit from those operations. (Compl., ¶¶ 8, 9). For an individual to be liable under the Cable Act, she must have authorized the violations alleged in the complaint. J & J Sports Productions, Inc. v. Benson, No. 06 Civ. 1119, 2007 WL 951872, at *7 (E.D.N.Y. March 27, 2007); cf. Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 971 (2d Cir. 1997) (individual liability for contributory copyright infringement). For vicarious liability to apply here, J & J must show that Ms. Meyers had a "right and ability to supervise" the violations, and that she had a strong financial interest in such activities. Softel, 118 F.3d at 971; Shapiro, Bernstein & Company, Inc. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963).

The allegations in J & J's complaint, inasmuch as they are deemed admitted as a result of the defendants' default, establish Ms. Meyers' individual liability. She was the principal and sole

---

[3] The complaint also alleges, presumably in the alternative, that She Sha is a partnership. (Compl., ¶ 12).

6

proprietor of She Sha, had supervisory capacity and control over its activities on the day of the fight, and received a financial benefit from them.  See Benson, 2007 WL 951872, at *7 (holding individuals liable under § 605(a) in similar factual scenario); Kingvision Pay-Per-View Limited v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *5 (S.D.N.Y. April 5, 2004) (same).  Accordingly, Ms. Meyers may be held jointly and severally liable along with the She Sha Beauty Salon for violating the Cable Act.

    D.   Damages

The plaintiff has elected to pursue statutory damages of up to $10,000.00 under § 605(e)(3)(C)(i)(II).  It also seeks an enhancement up to $100,000.00 under § 605(e)(3)(C)(ii) because the violation was willful. While there should be some proportionality between the loss suffered and the amount of statutory damages, the calculation should be generous enough to ensure that the plaintiff is fully compensated.

Many courts have noted that awarding statutory damages under § 605 is a discretionary exercise.  See, e.g., Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 589 (E.D.N.Y. 1997).  In this circuit, courts have generally adopted one of two approaches.  Where there is uncontradicted evidence of the number of patrons at the establishment, courts have often multiplied that number by a certain amount.  See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999); Time Warner Cable of New York City v.

Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y. 1997); Garden City Boxing Club, Inc. v. Morales, No. 05 Civ. 0064, 2005 WL 2476264, at *6-7 (E.D.N.Y. Oct.7, 2005). This amount has ranged from $20.00 per customer in Time Warner Cable of New York City v. Sanchez, No. 02 Civ. 5855, 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), to $50.00 per customer in Taco Rapido, 988 F. Supp. at 111, and Cablevision Systems Corp. v. 45 Midland Enterprises, Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994), to $300.00 per customer in Garden City Boxing Club, Inc. v. Salcedo, No. 04 Civ. 5027, 2005 WL 2898233, at *3 (S.D.N.Y. Nov. 3, 2005), and New Contenders, Inc. v. Diaz Seafood Corp., No. 96 Civ. 4701, 1997 WL 538827, at *2-3 (S.D.N.Y. Sept. 2, 1997). The calculation attempts to approximate either the profit obtained by the defendants with respect to each patron or the license fees of which the plaintiff was deprived, presuming that each patron would otherwise have ordered the event for residential use. See Kingvision Pay-Per-View Ltd. v. Cazares, No. 05 Civ. 2934, 2006 WL 2086031, at *3 (E.D.N.Y. July 25, 2006); Googies Luncheonette, 77 F. Supp. 2d. at 490; Taco Rapido, 988 F. Supp. at 111. Utilizing a slight variation, some courts have awarded the license fee the offender would have paid based on the establishment's capacity. See, e.g., Benson, 2007 WL 951872, at *5 (awarding $1,200.00 as equaling the license fee the defendant would have paid based on its capacity).

The second approach awards a flat sum for each violation. See, e.g., Garden City Boxing Club, Inc. v. Guzman, No. 03 Civ. 8776, 2005 WL 1153728, at *3 (S.D.N.Y. April 26, 2005) (awarding

8

$5,000); Jasper Grocery, 152 F. Supp. 2d at 442 (same). Courts using this analysis take into account "repeated violations over an extended period of time, [] substantial unlawful monetary gains by the defendants, or conversely, [] any significant actual damages to the plaintiff." Champs of New Haven, 837 F. Supp. at 484.

Here, the plaintiff has not submitted data showing the extent of the profits the defendants might have realized by illegally showing the fight. Nor has the plaintiff has provided the license fees that it charged its legitimate commercial and residential customers. If $50.00 were awarded for each observed patron, the damages would only amount to $500.00, half of the statutory minimum. Nevertheless, the availability of unauthorized access to programming reduces demand, and any damages award should be substantial enough to help deter future violations. See Kingvision Pay-Per-View Limited v. Autar, 426 F. Supp. 2d 59, 64 (E.D.N.Y. 2006); Cablevision Systems New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996).

For these reasons, it is appropriate to award the plaintiff $3,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). This figure is likely well in excess of what the plaintiff would have received if the defendant had legally purchased commercial exhibition rights to the fight and is far more than the minimal amount the defendant may have gained by showing it. It is equal to the $300 per patron that some courts have awarded in similar circumstances. See, e.g., Salcedo, 2005 WL 2898233, at *3; Diaz Seafood, 1997 WL 538827, at *2-3.

Furthermore, this award reflects the view that maximum statutory damages should be reserved for instances in which the plaintiff suffered more substantial injuries or the defendant obtained greater profits, and it takes into account the absence of a cover charge or major financial gain by the defendants.

The plaintiff is also entitled to an enhancement of the damages award based on the defendants' willfulness. In order for the defendant to access the transmission, it would have been necessary to use an unauthorized decoder or to divert cable service or satellite signals into the beauty shop.  The illegality of any of these actions would have been apparent to the perpetrator. See Googie's Luncheonette, 77 F. Supp. 2d. at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); Taco Rapido, 988 F. Supp at 111 ("In order for [the defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act . . . ."). Therefore, the violation here was willful.

On the other hand, the plaintiff's allegations do not demonstrate how the defendants reaped commercial profit by exhibiting the fight.  At best, the commercial advantages in showing the fight were tenuous and indirect.  Unlike those cases in which courts have awarded a more significant willfulness enhancement, there is no evidence that the patrons purchased any goods or services from the defendants during the showing of the fight. See, e.g., J & J Sports Productions, Inc. v. Drake, No. 06 Civ. 0246, 2006 WL 2927163, at *5 (E.D.N.Y.  Oct. 11, 2006) (noting

10

that barber shop is "not the type of venue which profits from the sale of food or drink"). Nowhere in the pleadings does the plaintiff suggest that the defendants advertised the event, charged a cover for entry, repeatedly violated section 605 over an extended time period, or derived significant profit from the event. In light of these circumstances and taking into account the need to deter future violations, enhanced damages of an additional $3,000.00 are warranted.

    E.   <u>Attorneys' Fees and Costs</u>

An award of costs, including attorneys' fees, is mandatory under § 605. 47 U.S.C. § 605(e)(3)(B)(iii); <u>see also</u> <u>Sykes</u>, 997 F.2d at 1009. The plaintiff has submitted an affidavit detailing 3.62 total hours spent on this matter at an hourly rate of $200.00. (Affidavit of Julie Cohen Lonstein dated April 19, 2007 ("Lonstein Aff."), ¶ 4). The hourly rate requested is reasonable for litigating a lawsuit of this nature in this district, and the amount of time spent on this matter was not excessive. The expenditure of 2.37 paralegal hours billed at an hourly rate of $75.00 was likewise reasonable. (Lonstein Aff., ¶ 4). The plaintiff is further entitled to $450.00 in costs, including filing fees and charges for service of process. Accordingly, the award should reflect costs and attorneys' fees in the amount of $1,351.75.

<u>Conclusion</u>

For the reasons set forth above, I recommend that judgment be entered in favor of the plaintiff, J & J Sports Production, Inc.,

and against the defendants, Tonja Meyers and the She Sha Beauty Salon, jointly and severally, for $6,000.00 in statutory damages and $1,351.75 in costs and fees, for a total of $7,351.75. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Barbara S. Jones, Room 620, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         July 16, 2007

Copies mailed this date:

Julie C. Lonstein, Esq.
Lonstein Law Office, PC
1 Terrace Hill
P.O. Box 351
Ellenville, New York 12428

Tonja Meyers
100 West 134th Street
New York, New York 10030-3104

She Sha Beauty Salon
100 West 134th Street
New York, New York 10030-3104